```
               IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>     v.<br><br>DONALD STEPHEN JOHNSON,<br><br>          Petitioner | HONORABLE JEROME B. SIMANDLE<br><br>Criminal No. 04-793 (JBS)<br><br><u>**OPINION**</u> |

APPEARANCES:

Donald Stephen Johnson
10904 Lake Arbor Way
Bowie, MD 20721
     *Petitioner Pro Se*

Paul J. Fishman, United States Attorney
     By: Diana Carrig, Assistant United States Attorney
US Post Office Building
401 Market Street
4th Floor
Camden, NJ 08101
     *Attorney for Respondent*

**SIMANDLE**, Chief Judge:

I. **INTRODUCTION**

    This matter comes before the Court on the motion of Petitioner Donald Johnson for return of property pursuant to Fed. R. Crim. P. 41(g). [Docket Item 11.]

    In 2004, Johnson pleaded guilty to 13 bank robberies. This Court sentenced Johnson to 132 months of imprisonment, followed

by three years of supervised release and ordered Johnson to pay restitution. In the present motion, Johnson argues that his property seized during the criminal investigation should be returned to him because the items were neither evidence nor subject to forfeiture and were donated to an Atlantic City-based charity by the government without Johnson's permission. For the reasons discussed herein, Johnson's motion for return of property will be denied.

## II.  BACKGROUND

On or about June 12, 2003, Donald Johnson was arrested after robbing the Commerce Bank branch in Somers Point, New Jersey, of approximately $10,330.00, and leading the police on a high-speed automobile chase. Law enforcement officers seized the Ford Expedition that Johnson had been driving on the day of the robbery. They searched the vehicle and seized several personal items found inside.[1] The Federal Bureau of Investigation ("FBI") also searched Johnson's hotel room at the Caesars Atlantic City Hotel & Casino and seized numerous items.[2] Items seized from the person of Johnson include: a silver and gold bracelet, approximately $20 in cash, three $25 Tropicana gaming chips, a

---

[1] The items seized from the Ford Expedition were: a gold ring, a CD, a Sony amplifier, a wallet, boots, flip-flops, a gold cross, and several miscellaneous items of little value. (Gov't Ex. A.)
[2] The items seized from the hotel room were: several skull caps, two pairs of shoes, one shoe without a pair, a black leather bag, and other articles of clothing. (Gov't Ex. A.)

gold ring, and a gold cross. (Gov't Ex. B.) Johnson pleaded guilty to 13 bank robberies and was sentenced to 132 months imprisonment, followed by three years of supervised release, and the Court ordered him to pay $84,201 in restitution. See Judgment as to Donald Stephen Johnson, United States v. Johnson, Crim. No. 04-793 (D.N.J. Sep. 22, 2005). Johnson was recently released from prison and currently resides in Maryland.[3]

After Johnson was arrested, FBI Special Agent Joseph Furey ("Agent Furey") had conversations with Johnson in which Johnson directed him to return the property to Johnson's father, Donald Johnson, Sr.[4] (Certification of Agent Furey ¶ 4d.) Johnson, Sr., is an attorney. Thereafter, Agent Furey spoke to Donald Johnson, Sr., on several occasions about returning Johnson's property. (Opp'n at 2.) Within a few weeks of the arrest, Agent Furey returned the Ford Expedition to Johnson's parents. Id. Shortly thereafter, on July 22, 2003, Agent Furey returned more of Johnson's property to Johnson's parents including currency, gaming chips, a sliver and gold bracelet and a gold cross. Id. at Ex. B. Johnson and attorney Michael Milstead, Esq., who

---

[3] The most recent filing on the docket is a notice of change of address for Johnson. [Docket Item 14.]
[4] Johnson does not explicitly contest this assertion, but claims that he himself never consented to the donation of his property. In his reply, Johnson writes that the government's claim "of having spoken to petitioner's father to donate defendant's property, is without written or verbal consent from petitioner that it was petitioner's wish to have all of petitioner's worldly possessions donated." (Reply Br. at 1.)

3

handled Johnson's criminal defense, were informed of the return of some of Johnson's property to his parents. Id. Agent Furey had additional conversations with Donald Johnson, Sr., about retrieving the remainder of the property. Id. Donald Johnson, Sr., agreed to pick up the remaining property, but he never retrieved it. Id.

Ultimately, in a later conversation in 2011, Agent Furey and Donald Johnson, Sr., agreed that the remaining property should be donated to the Atlantic City Rescue Mission. Id.; (Certification of Agent Furey ¶ 6a). Mr. Milstead also agreed on or about April 12, 2011 that the items should be donated. (Opp'n at 2.) Before donating the property, Agent Furey "sorted through the property in evidence and discarded or destroyed property which had little or no value, including for example, used (soiled) clothes and shoes, a water glass, an expired Driver's License and a few music CDs." (Certification of Agent Furey ¶ 7.) On May 11, 2011, Agent Furey then donated the remaining property to the Atlantic City Rescue Mission.[5] Id. ¶ 8.

Johnson now requests the return of one black Oakley Watch, three luggage bags, one cell phone (Nextel), one black CD case (with over 100 CDs), an amplifier and accessories, 30 pairs of

---

[5] Donated property includes: one watch, one tuxedo with black shoes, a Sony subwoofer, three black luggage bags, ten pairs of shoes, six hats, and numerous articles of clothing. (Gov't Ex. C.)

4

shoes, his wallet, his driver's license, his clothes, and all other personal property of Johnson. (Pet. Schedule A.)

### III. DISCUSSION

**A.  Rule 41(g) and Third Circuit Case Law**

Fed. R. Crim. P. 41(g) provides:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g).

"Property seized by the government as part of a criminal investigation 'must be returned once criminal proceedings have concluded, unless it is contraband or subject to forfeiture.'" United States v. Albinson, 356 F.3d 278, 280 (3d Cir. 2004) (citing United States v. Chambers, 192 F.3d 374, 376 (3d Cir. 1999)). Where no criminal proceeding is pending, or after such proceeding has been terminated, a proceeding for return of property under Rule 41(g) has been deemed a civil proceeding for equitable relief. Chambers, 192 F.3d at 376. "A district court has jurisdiction to entertain a motion for return of property made after the termination of criminal proceedings against the defendant." Id.

5

There are three principal cases from the Third Circuit that are controlling when a motion for return of property is made after criminal proceedings have concluded. The Court will summarize the holdings of these cases before analyzing the present issues. The first case on point is United States v. Chambers. In that case, the Third Circuit vacated the district court's holding that a Rule 41(g) motion was moot because the government no longer had the property. Chambers, 192 F.3d at 374. The property at issue there had been forfeited, released to a repossession company, destroyed or returned to the petitioner's girlfriend. Id. at 375-76. The government's only response to petitioner's motion was that it no longer possessed the property.

The Third Circuit concluded "the government can not defeat a properly filed motion for return of property merely by stating that it has destroyed the property or given the property to third parties." Id. at 377. "The government must do more than state, without documentary support, that it no longer possesses the property at issue." Id. at 377-378. When the government asserts it no longer possesses the property in question, the court "must determine, in fact, whether the government retains possession of the property." Id. at 378. If, in fact, the government no longer possesses the property, the court "must determine what happened to the property." Id. "The District

6

Court must hold an evidentiary hearing on any disputed issue of fact necessary to the resolution of the motion." Id. Lastly, "if the District Court concludes that the government's actions . . . were not proper, it shall determine what remedies are available." Id. at 378.

In United States v. Bein, 214 F.3d 408, 410 (3d Cir. 2000), the Third Circuit ruled that monetary damages cannot be awarded in Rule 41(g) motions. In Bein, the Third Circuit reversed the decision of the district court to award money damages for certain property that was destroyed by the government or missing. The Third Circuit held that the district court lacked jurisdiction over a Rule 41(g) motion seeking to recover damages for property that the government allegedly destroyed. Id. at 416. The court noted that the principles of "sovereign immunity bar[] a claim against the government seeking money damages under Rule 41(e)."[6] Bein, 214 F.3d at 410.

Finally, in United States v. Albinson, the Third Circuit held that the district court does not need to have an evidentiary hearing when the government submits certain evidence

---

[6] Rule 41(e) was the predecessor to Rule 41(g). "Fed. R. Crim. P. 41 was amended in 2002 'as part of a general restyling of the Criminal Rules to make them more easily understood and to make style and terminology consistent throughout the rules.' See Fed. R. Crim. P. 41 advisory committee's note. As a result of the 2002 amendments, the previous Fed. R. Crim. P. 41(e) now appears with minor stylistic changes as Rule 41(g)." Albinson, 356 F.3d at 279.

explaining why it no longer has the petitioner's property. 356 F.3d at 278. In Albinson, the district court denied petitioner's motion for return of property without an evidentiary hearing, and the Third Circuit reversed and remanded. The district court reasoned that since the government had lost or destroyed all of petitioner's possessions, an evidentiary hearing would be futile given the Third Circuit's decision in Bein barring money damages on Rule 41(g) motions. The Third Circuit disagreed, and reaffirmed that it was necessary to have evidentiary hearings on "any disputed issue of fact necessary to the resolution of the motion," which may include determining "what happened" to the seized property. Id. at 282 citing Chambers, 192 F.3d at 378. The Third Circuit acknowledged that "a district court need not necessarily conduct an evidentiary hearing on every Rule 41(g) motion." Albinson, 356 F.3d at 281. The government could furnish "affidavits or documentary evidence, such as chain of custody records, [that] may be sufficient to support a fact finder's determination." Id. at 282. The rationale behind having the government submit evidence is that forcing the government to provide evidence creates incentives for the government to document its property seizures and chain of custody properly. Id. at 283. Furthermore, forcing the government to provide evidence might result in the government uncovering property that it thought it did not possess. Id.

8

In sum, a district court must determine (1) whether the government has the property and (2) if the government does not have the property, what happened to the property. Chambers, 192 F.3d at 378. If the government no longer retains the property, it "must do more than state, without documentary support, that it no longer possesses the property at issue." Id. at 377-78. The government can produce documents to show it no longer possesses the property, for example, "affidavits or . . . chain of custody records." Albinson, 356 F.3d at 282.

**B. Parties' Arguments**

Petitioner argues that since "the property being requested at this time was not used in the government's case to convict petitioner and was not used as part of the government's investigation or prosecution," the property should be returned pursuant to Rule 41(g). (Mot. for Return of Property at 2.) In addition, Petitioner asserts that "the property in question was not part of an order [of] forfeiture," or part of the restitution imposed at sentencing, and to withhold the property would constitute "double jeopardy." Id. at 3.

In opposition, the government states that it does not have any of Petitioner's requested property and the motion should therefore be denied. (Opp'n at 1.) The government attaches an itemized donation receipt and a certification detailing the conversations Agent Furey had with Petitioner, his father and

9

attorney and describing the disposition of Petitioner's property. Finally, the government asserts that "some of the items Petitioner seeks -- including a cd case containing more than 100 cds -- were never seized by the FBI."[7] (Opp'n at 3.)

Petitioner responds that he should have been addressed personally, rather than through his father and former attorney, before his property was donated. (Reply at 1.) Further, Petitioner asserts "Michael Milstead, ESQ. has not represented petitioner since sentencing." Id. Petitioner notes that he is "well over the age of 21," and "did not give anyone the power of attorney." Id. Also, Petitioner asserts that he could have been contacted via mail and never was. Id. Petitioner does not expressly contest Agent Furey's statement that Petitioner himself directed Agent Furey to return items to Petitioner's father, but complains that Agent Furey never contacted Petitioner personally when proposing to donate the property.

Petitioner's reply brief also raises several new claims and arguments.[8] The Court will not address the claims raised for the

---

[7] There are items that Johnson requests that are not listed on any property receipts from the seizures, including a Nextel cell phone. There is no record evidence that the government ever had these items.

[8] Defendant claims that the government wrongfully converted his property for the government's own use and that the sentencing judge violated his due process rights by failing to inform Defendant "of the forfeiture at sentencing." (Reply at 1.) Also, Defendant seeks a declaration that the government violated Defendant's constitutional rights; a preliminary and permanent

10

first time in Petitioner's reply brief. "It is axiomatic that Reply Briefs should respond to the respondent's arguments or explain a position in the initial brief that the respondent has refuted." Elizabethtown Water Co. v. Hartford Cas. Ins. Co., 998 F. Supp. 447, 458 (D.N.J. 1998) citing Egert v. Connecticut Gen. Life Ins. Co., 900 F.2d 1032, 1035 (7th Cir. 1990) ("Arguments withheld until the reply brief ordinarily will not be considered.").

### C. The Government No Longer Has the Property

The evidentiary record conclusively demonstrates that the government no longer has Petitioner's requested property. Agent Furey certified that "Donald Johnson told me to return the property that was not needed as evidence to his father, Donald Johnson, Sr." (Certification of Agent Furey ¶ 4d.) Agent Furey further certified that he attempted to return the property to Petitioner's father. (Id. ¶ 7.) Agent Furey returned the Ford Expedition and other unspecified property to Petitioner's father. (Id. ¶ 4e.) Donald Johnson, Sr., informed Agent Furey that he would pick up the remainder of Petitioner's property, but ultimately did not do so. Id. Overall, the government then retained the property for almost eight years before donating the property with the consent of Petitioner's father and attorney.

---

injunction against the government; compensatory damages in the amount of $150,000; and, punitive damages in the amount of $150,000. Id.

11

See Gov't Ex. C. It is not clear from the record when the attorney-client relationship between Mr. Milstead and Petitioner terminated.[9] Nonetheless, it was reasonable for the government to speak to Mr. Milstead absent any indication from Mr. Milstead that he no longer represented Petitioner. Likewise, it was reasonable for the government to rely on Mr. Milstead's implied or apparent authority to speak on behalf of Petitioner. The Court finds that the government acted properly in its disposition of Petitioner's items.

The government has provided exhibits to attest to the communications mentioned above and to document the disposition of the property. The itemized property receipts detail the seizures and donations. The itemized property receipts account for all items of value seized by the government and now sought by Petitioner. The government has met its burden and a hearing on this issue is not warranted.

Petitioner cites United States v. McGlory, 202 F.3d 664 (3d Cir. 2000), in support of his argument that his property should be returned. In McGlory, the Drug Enforcement Administration ("DEA") initiated forfeiture proceedings for items seized from appellant prisoner and appellant's family members during a

---

[9] Johnson contends the attorney-client relationship ended after sentencing (Reply at 1), but the government continued to contact Milstead, who never gave the government reason to believe he no longer represented Petitioner. (Opp'n at 2; Certification of Agent Furey ¶¶ 4a, 4d, 4f, & 6).

12

criminal investigation. The DEA attempted to serve notice on appellant at various locations, but appellant contended that he never received notice. Id. at 674. The court in McGlory held that a prisoner must receive notice of administrative forfeiture proceedings at his place of confinement. Id. at 674. McGlory is inapplicable because there were no administrative forfeiture proceedings in this case. Regardless, Petitioner was contacted regarding his property and he directed the government to give the property that was not needed for investigative or evidentiary purposes to his father. (Certification of Agent Furey ¶ 4d.) His father was thus designated as the person with authority to arrange for the disposition or safe-keeping of his property. Agent Furey needed to look no further than Johnson's father and his lawyer in arranging for disposition of these articles of personal property.

**D. There Are No Remedies Available to Petitioner**

Finally, the Court in Chambers provided that if a district court determined the discarding of a defendant's items was "not proper," the Court must "determine what remedies are available." Chambers, 192 F.3d at 378. Although the Third Circuit has not defined what constitutes "proper" government conduct, the government's actions here were proper by any definition because they followed Petitioner's explicit directions and reasonably relied on communication with Mr. Milstead, who had at least

13

implied or apparent authority to speak for Petitioner. The government has accounted for the destruction or donation of most property requested by Petitioner. The remaining property requested by Petitioner was never seized by the FBI.[10]

Even if the government had not acted properly, the principles of "sovereign immunity bar[] a claim against the [g]overnment seeking money damages" under Rule 41(g). Bein, 214 F.3d at 410. Rule 41(g) provides only one remedy: the return of property seized. Id. at 415; See also United States v. Underwood, 408 Fed. Appx. 620 (3d Cir. 2010). Therefore, there are no remedies available to Petitioner under Rule 41(g).

Petitioner's reliance on United States v. Farese, a Southern District of New York case where monetary damages were awarded in on a 41(g) motion, is misplaced.[11] No. 80 Cr. 63, 1987 WL 28830 (S.D.N.Y. Dec. 15, 1987). Farese is from a district court in another circuit, is not binding on this Court, and is

---

[10] There is no record of the government having "30 pairs of shoes" (Pet'r Schedule A) and other shoes were destroyed. (Certification of Agent Furey ¶ 7). Johnson's Driver's License was destroyed because it was expired. Some CDs were destroyed and the other CDs requested by Johnson, including the CD case, "were never seized by the FBI." (Opp'n at 3.) Finally, there is no record of the cell phone being seized.

[11] In Farese, the indictment against petitioner was dismissed and the government retained some of the property seized. After not receiving his property, Farese filed a motion for return of property five years later. The court ordered the government to return the amount of money seized from petitioner with interest, plus the fair market value of the remaining items seized.

distinguishable from the present case.[12] In addition, <u>Farese</u> was decided before the controlling cases in the Third Circuit were decided. <u>Bein</u> bars the award of money damages in 41(g) motions in the Third Circuit because the government is shielded by sovereign immunity. <u>Bein</u>, 214 F.3d at 410. Monetary damages are not available to Johnson.

**IV. <u>CONCLUSION</u>**

    For the reasons set forth above, Johnson's motion for return of property will be denied.

  <u>April 22, 2013</u>                     <u>s/  Jerome B. Simandle</u>
Date                              Jerome B. Simandle
                                  Chief U.S. District Judge

---

[12] <u>Farese</u> is not persuasive authority because it is distinguishable on several grounds. First, the indictment in <u>Farese</u> was dismissed. Second, the discussion in <u>Farese</u> focuses on the doctrine of laches, which is not asserted by the government in this matter. Finally, in <u>Farese</u> the government did not have any records of the property seized or forfeited. Here, the government provided adequate records detailing the seizure and disposition of Johnson's property.

15